IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

PHILIP BROWN,

Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

Defendant.

Case No. 07-1075-MLB

RECOMMENDATION AND REPORT

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits. The matter has been fully briefed by the parties and has been referred to this court for a recommendation and report.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the

correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial

gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not

to be disabled. If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

**II. History of case**

On September 28, 2006, administrative law judge (ALJ) Michael R. Dayton issued his decision (R. at index, 12-17). Plaintiff alleged that his disability began June 25, 1999 (R. at 12). Plaintiff last met the insured status requirement for disability insurance on December 31, 2004 (R. at 14). At step

one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since his alleged onset date (R. at 14). At step two, the ALJ found that plaintiff had no severe impairments (R. at 14-17). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 17).

**I. Did the ALJ err in his finding that plaintiff had no severe impairments?**

The burden of proof at step two is on the plaintiff. See Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993)(the claimant bears the burden of proof through step four of the analysis). A claimant's showing at step two that he or she has a severe impairment has been described as "de minimis." Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir. 1997); see Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988)("de minimis showing of medical severity"). A claimant need only be able to show at this level that the impairment would have more than a minimal effect on his or her ability to do basic work activities.[1] Williams,844 F.2d at 751. However, the claimant must show more than the mere

[1]Basic work activities are "abilities and aptitudes necessary to do most jobs," 20 C.F.R. § 404.1521(b)[416.921(b)], including "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgement, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting." Social Security Ruling 85-28, 1985 WL 56856 at *3. Langley v. Barnhart, 373 F.3d 1116, 1123 (10th Cir. 2004).

presence of a condition or ailment. If the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities, the impairments do not prevent the claimant from engaging in substantial work activity. Thus, at step two, the ALJ looks at the claimant's impairment or combination of impairments only and determines the impact the impairment would have on his or her ability to work. Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997).

A claimant must provide medical evidence that he or she had an impairment and how severe it was during the time the claimant alleges they were disabled. 20 C.F.R. § 404.1512(c), § 416.912(c). The evidence that a claimant has an impairment must come from acceptable medical sources including licensed physicians or psychologists. 20 C.F.R. § 404.1513(a), § 416.913(a). Evidence from other medical sources, including therapists, nurse-practitioners, and physicians' assistants, may be used to show the severity of an impairment and how it affects the ability to work. 20 C.F.R. § 404.1513(d)(1), § 416.913(d)(1).

The ALJ made the following findings regarding plaintiff's impairments:

> Through the date last insured [December 31, 2004], the claimant had the following medically determinable impairments: diverticulitis (not severe after 2003);

> rheumatoid arthritis, but not severe prior to the date last insured...
>
> Through the date last insured, the claimant did not have an impairment or combination of impairments that significantly limited his ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant did not have a severe impairment or combination of impairments.

(R. at 14). Plaintiff contends that the ALJ erred in deciding that his rheumatoid arthritis was not severe prior to the expiration of his insured status, and also erred in deciding that his diverticulitis was not severe at any time or for a 12 month period (Doc. 10 at 3, 11-13).

The ALJ found that there was no evidence of treatment or diagnosis of rheumatoid arthritis until after his date last insured on December 31, 2004 (R. at 16). Plaintiff argues that the ALJ erred by not calling a medical advisor pursuant to SSR 83-20 in order to determine the onset date of plaintiff's rheumatoid arthritis. In the case of Blea v. Barnhart, 466 F.3d 903, 909, 911 (10th Cir. 2006), the court stated:

> SSR 83-20 also provides that, when medical evidence does not establish the precise onset date [of disability], the ALJ may have to "infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process." Id. at 2...
>
> It is important to understand that the issue of whether a medical advisor is required under SSR 83-20 does not turn on whether the ALJ could reasonably have determined that [the claimant] was not disabled before [her

> last insured date]. Rather, when there is no contemporaneous medical documentation, we ask whether the evidence is ambiguous regarding the possibility that the onset of her disability occurred before the expiration of her insured status. If the medical evidence is ambiguous and a retroactive inference is necessary, SSR 83-20 requires the ALJ to call upon the services of a medical advisor to insure that the determination of onset is based upon a "legitimate medical basis." [citation omitted]...
>
> ...our precedent clearly establishes that where "medical evidence of onset is ambiguous," an ALJ is obligated to call upon the services of a medical advisor. [citations omitted]

SSR 83-20 governs when the evidence is ambiguous regarding the possibility that the onset of a claimant's disability occurred before the expiration of the claimant's insured status. In Blea, the Commissioner had found that plaintiff was disabled as of March 1, 2002, and was entitled to supplemental security income (SSI) payments. However, he was denied disability insurance (DI) benefits because he was last eligible for DI on December 31, 1998. Blea, 466 F.3d at 906-907. Thus, in Blea, the onset date of plaintiff's disability was clearly critical to a determination of whether plaintiff was entitled to DI benefits, or only SSI payments. In the case before the court (Brown), plaintiff was never found to be disabled. The use of SSR 83-20 is predicated on a finding that plaintiff was disabled at some point. Thus, SSR 83-20 is not applicable in this case.

The record contains two letters from plaintiff's treating

physicians. Dr. Reiswig was plaintiff's treating physician from July 1998 through April 2006 (R. at 142-179, 224-234). In a letter dated June 15, 2006, Dr. Reiswig stated the following:

> Philip Brown is a patient of long-standing of mine who I have seen for many years. He has been diagnosed with seropositive rheumatoid arthritis and has been seen by myself and Dr. Timothy Shaver for this problem. The actual diagnosis was made around May to June 2005. Part of that time he had occasional signs and symptoms of palindromic rheumatism but in review of my records, never did find that symptoms were severe enough that we actually addressed them in the office notes. I am aware at times he was taking Ibuprofen or requiring extra rest if he became to[o] active but did not actually seek specific medical treatment or schedule specific office visits for these problems. I have been asked to comment on whether his arthritic type symptoms were present May 2005. I would certainly yes although they are not well documented in the chart. In terms of any disability, I am not sure that I can speak to that. I am not aware of days missed from work or the amount of anti-inflammatories or other therapy modalities that he might have sought at time. Mr. Brown is generally not a complainer so would tend to understate lesser problems. I would estimate, however, that from 1999 to 2005 when I was seeing him he had complained about it on several different occasions.

(R. at 290, emphasis added).

Dr. Reiswig referred plaintiff to Dr. Shaver for an evaluation of rheumatoid arthritis in June 2005 (R. at 187). Dr. Shaver evaluated and treated plaintiff during 2005 (R. at 180-199, 207-214). Dr. Shaver wrote a letter dated June 5, 2006 in

which he stated the following:

> I am writing you regarding Philip Brown. First of all, Mr. Brown did indeed present with palindromic rheumatism and evolved fairly quickly to classic seropositive rheumatoid arthritis. The palindromic rheumatism diagnosis was made in June 2006,[2] and by the time I saw him for his first office visit, Mr. Brown did have a fairly typical pattern of synovitis that would squarely put him in the category of rheumatoid disease. In terms of how long his condition went undiagnosed, I am uncertain, and I can only rely on his history given the fact that 1 did not have the opportunity to follow him around for the several months prior to him coming to my office. He reports his first symptoms in the first part of May 2005 and did report having migratory arthritis up to eight years ago which essentially became more typical for rheumatoid arthritis and tended to involve the affected joints more persistently since that time. The only way I came to believe that his palindromic rheumatism predated his rheumatoid arthritis was the fact that he told me so. I do tend to believe what patients actually tell me. There is no other way to distinguish between these two conditions reliably by laboratory testing or by xrays.
>
> The description that Mr. Brown gave of his joint symptoms prior to the onset of his more persistent joint pain and swelling would be very consistent with palindromic rheumatism and this should be fairly apparent by looking through my notes.

(R. at 288).

Neither treating physician provided any evidence that

[2]Dr. Shaver's office notes would indicate that this diagnosis was actually made in June 2005 when he first saw the plaintiff (R. at 184-187).

plaintiff's rheumatoid arthritis had more than a minimal effect on his ability to perform basic work activities prior to December 31, 2004, when plaintiff's insured status expired. In fact, Dr. Reiswig indicated in his letter that on or before the diagnosis in May to June 2005, he never found that the symptoms were severe enough that they were actually addressed in the office notes, and that plaintiff did not actually seek medical treatment or schedule an office visit for these problems, although plaintiff, from 1999-2005, had complained about these problems on several different occasions (R. at 290). According to Dr. Shaver, plaintiff reported his first symptoms of rheumatoid disease in May 2005, although he had reported having migratory arthritis for 8 years (R. at 288). Plaintiff, although he has the burden of proof at step two, has failed to provide any medical evidence that the impairment of rheumatoid arthritis was a severe impairment prior to December 31, 2004. Therefore, the court determines that the ALJ's finding that plaintiff's rheumatoid arthritis was not a severe impairment prior to December 31, 2004 is supported by substantial evidence.

The court will next address the impairment of diverticulitis. The ALJ found that it was not a severe impairment after 2003, and that there was not a 12 month period prior to December 2004 where plaintiff had significant vocationally related limitations (R. at 14, 15). Plaintiff

concedes that any limitations from diverticulitis ended on May 6, 2003, following surgery (R. at 276, Doc. 10 at 12).

Although plaintiff points out that medical records indicate that he complained of abdominal pain, cramping and loose stools in 1998-2000 (Doc. 10 at 12), plaintiff failed to cite to any medical evidence that this impairment had more than a minimal effect on his ability to perform basic work activities. The ALJ found that plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were not entirely credible (R. at 15). The ALJ further noted that there was no indication in the medical records of limitations that would restrict work at that time, and there was no physician's opinion that plaintiff could not work (R. at 15). The court can neither reweigh the evidence nor substitute its judgment for that of the agency. White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002). The court finds that substantial evidence supports the finding of the ALJ that plaintiff's impairment of diverticulitis was not a severe impairment after 2003 or for a 12 month period prior to December 31, 2004.

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be affirmed.

Copies of this recommendation and report shall be provided to counsel of record for the parties. Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule

72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on December 5, 2007.

                                      s/John Thomas Reid
                                      JOHN THOMAS REID
                                      United States Magistrate Judge